IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHARON R. CLEVENGER                                        PLAINTIFF

v.                          No. 4:06CV00718 JMM

SOCIAL SECURITY ADMINISTRATION                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties have submitted their appeal briefs,[1] and the issues are now joined and ready for decision.

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.[2]

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have

---

[1] Plaintiff's brief was filed on October 26, 2006, and the Commissioner's brief was filed on December 1, 2006.

[2] Plaintiff had the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

-1-

supported a contrary outcome, or because we would have decided the case differently.

Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

Plaintiff filed an application for DIB and SSI on July 30, 2002, alleging that she became disabled on July 12, 2001,[3] due to an ulcer, a learning disability and fibromyalgia (Tr. 121).[4] Her claims were denied initially and upon reconsideration (Tr. 39, 43). Pursuant to plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on February 15, 2005 (Tr. 258-280), on her claims of arthritis, fibromyalgia, ulcers, a learning disability, and pain in the hands, neck, back, knees, legs and shoulders (Tr. 17). Also present was Katie Clevenger, plaintiff's daughter (Tr. 258).

Plaintiff was 40 years old on the date of the ALJ's decision[5] (Tr. 17, 263). She has a high school education and has past relevant work (PRW) experience as a school aide, a school cook and cashier/stocker at Walmart (Tr. 17, 263-268).[6]

At the hearing, plaintiff testified that she lives with her husband and three daughters, ages 18, 15, and 11 (Tr. 263). She identified the problems that keep her from being able to do her PRW as her neck, shoulders, back, knees, and feet hurting and her hands cramping so she does not have

---

[3]When questioned about the onset date at the February 15, 2005 hearing, plaintiff's counsel acknowledged that plaintiff had worked, with special considerations, through May of 2002 (Tr. 262).

[4]Plaintiff had previously filed for DIB on April 23, 2001, alleging an onset date of September 15, 1995, but did not appeal the July 10, 2001 initial level denial of the claim (Tr. 16, 35).

[5] April 22, 2005 (Tr. 13, 23).

[6]In her April 10, 2001 disability report, she also listed front desk clerk and census taker (Tr. 90).

any grip (Tr. 269).  Plaintiff said that her neck starts to hurt within 10-20 minutes of when she looks down, can last thirty minutes to an hour, and it occurs four or five times a week (Tr. 270-271).  She states that she uses ice or heat and takes only over the counter pain medicine of Tylenol Arthritis, Percogesic, regular Tylenol, Ibuprofen, and Advil because she has a fear of getting hooked on prescription pain medications (Tr. 270-271).  She rated her shoulder pain as a seven and a spot on her back that hurts her probably 85% of the time as being a ten a lot of the time (Tr. 271).  Plaintiff described her hands as cramping real bad and swelling on a daily basis (Tr. 272).  She acknowledged that she had problems with fine manipulation (Tr. 272-273).  Plaintiff testified that her knees lock-up, ache and swell when she is sitting and/or standing and her feet hurt and sting from standing (Tr. 273-274).  She estimated that she can stand for 10-20 minutes before she starts hurting in several places such as her feet, knees, and back (Tr. 274).  For relief, she walks around the house, sits down, uses a massager, and takes pain medicine although it makes her sleepy (Tr. 274-275).  Sometimes she can get up again in 15 or 20 minutes, but some days – three or four days a week – she can hardly get out of bed (Tr. 275).  Plaintiff stated that she can sit 20-30 minutes before she starts hurting and uses the massager, heat packs, walking or muscle rub for relief (Tr. 275-276).  She testified that she has pulling in her back when she bends over and can hardly squat due to her knees (Tr. 276).  Plaintiff takes showers because of the difficulty with getting in and out of a tub (Tr. 276).

Her husband and daughters help her with the housework (Tr. 276).  She cannot go to some of her daughters' games due to the distance to drive and sitting on bleachers and she uses a pillow for her back at church and rests at the home of the pastor and his wife after Sunday school (Tr. 276-277).  Plaintiff estimated that she spends three to four hours each day on the massager in the recliner (Tr. 277).  She described daily memory problems such as forgetting to pay bills (Tr. 277-278).

Plaintiff said it had been two or three months since she had seen Dr. Steven Carter and she did not see him on a regular basis since he had referred her to Dr. Cummins Lue, who she had last seen a year ago, when he then referred her to UAMS (Tr. 278).

The ALJ undertook the familiar five-step analysis in determining whether plaintiff was disabled.[7]  He found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 17).  The ALJ further found that plaintiff has polyarthritic arthralgias and fibromyalgia which are "severe" impairments, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18).  He next considered plaintiff's residual functional capacity (RFC) including utilizing the factors outlined in Polaski v. Heckler, 739 F. 2d 1320 (8th Cir. 1984).[8]

The ALJ's written opinion reflected a review of the medical records.  Dr. Carter's clinic records showed plaintiff was assessed with polyarticular arthralgias on March 8, 2000, and she was referred to Dr. Lee, a rheumatologist, for further evaluation (Tr. 18).  Dr. Lue's May 14, 2002 physical examination of plaintiff showed no evidence of synovitis or joint effusions in the hands,

---

[7]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520.  See, Cox v. Barnhart, 345 F. 3d 606, 608 n. 1 (8th Cir. 2003).

[8]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) other treatments for relief of pain; and (6) functional restrictions.

wrists, elbows, and shoulders; overall, he did not see any signs of inflammatory arthritis; he assessed her with rheumatic pains in the shoulders, back areas, and over the elbows; and he prescribed physical therapy (Tr. 18). His March 13, 2002 notes were that plaintiff had cancelled a follow-up visit and had not had the physical therapy due to lack of medical insurance and assessed plaintiff with soft tissue rheumatic pains with fibromyalgia-like features for which he again recommended physical therapy (Tr. 18).

The ALJ recounted that physical therapy notes indicated that plaintiff was treated from April 8 to May 15, 2002, when it was discontinued due to inconsistent results. He noted that Dr. Lue, on July 15, 2002, assessed Plaintiff with myofascial pains in her shoulder and gluteal area, recurrent hand pain with normal sed rate and normal hand x-rays and referred her to an orthopedic specialist, Dr. Larry Nguyen, for evaluation of her knees. The ALJ continued that, on July 19, 2002, Dr. Nguyen assessed Plaintiff with bilateral patellofemoral syndrome and recommended quad strengthening and wearing a Neoprene sleeve, but she did not need any surgical correction. Dr. Lue found plaintiff, on October 4, 2002, with seronegative polyarthritis and stated that her foot pain was likely due to mechanical irritation rather than inflammatory disease and recommended continuation of her medications of Sulfasalazine, Ultracet, and Nexium and add the occasional use of Tylenol Arthritis (Tr. 18).

The ALJ also reviewed medical records received after the hearing as a result of a referral by Dr. Lue to Dr. Ricardo Zuniga, who is an Assistant Professor of Internal Medicine and Rheumatology at UAMS, where he noted on November 24, 2003, that plaintiff reported constant pain that significantly worsened with physical activity, but with no morning stiffness and no current medications; her fibromyalgia tender points 18/18 were positive; the musculoskeletal exam revealed

a full range of motion with no evidence of pain, crepitus, synovitis, joint effusion, or joint deformity with regard to the neck, shoulders, elbows, wrists, hands, hips, knees, ankles, feet, and spine; there was no evidence suggestive of any other rheumatologic condition and it was very unlikely for a patient with an inflammatory condition not to have physical findings; his conclusion was plaintiff has symptoms and findings of fibromyalgia syndrome (FMS) for which he recommended anti-depressant medications, muscle relaxants, anti-inflammatories to improve the quality of her life as well as water aerobic exercise, which is the only specific therapy for fibromyalgia (Tr. 19).

The ALJ also referenced records received post-hearing of Dr. Carter's from March 12, 2002 through January 5, 2005, showing that he treated the Plaintiff for a facial rash, post prandial abdominal pain, sinusitis, and dyspepsia. In the ALJ's review, he stated that although Dr. Carter noted on March 12, 2 002 that plaintiff had a long history of fibromyalgia, arthralgias and a normal sed rate, the records show no evidence that she complained of any pain during the September 9 and October 7, 2002 visits and she did not see Dr. Carter for over two years until she presented him with disability forms to be filled out for her attorney on January 5, 2002, at which time Dr. Carter noted that plaintiff was not currently receiving any routine therapy for her fibromyalgia (Tr. 19).

Next, the ALJ reviewed plaintiff's July 20, 2002 supplemental interview form where she stated that she was able to perform personal care, she could do household tasks, shop for groceries, perform banking, and prepare meals some of the time; that she could pay bills, use a checkbook and count change; she was unable to drive or walk for a very long time; and she spent her time attending church, watching TV, listening to the radio, and sometimes visiting friends and relatives (Tr. 19). He also referenced her hearing testimony regarding pain, medications, and help with housework and

stated plaintiff does experience some limitations due to polyarthritic arthralgias and fibromyalgia while he questioned the degree of limitation.

The ALJ found that the record showed that plaintiff has received medical treatment and been prescribed medications which had generally been successful in controlling her symptoms; the medical treatment received had essentially been routine and conservative in nature; and plaintiff had not taken any narcotic based pain relieving medications in spite of allegations of quite limiting pain. He further noted that plaintiff had cancelled a follow-up appointment with Dr. Lue and did not comply with his prescription for physical therapy – although she said it was due to lack of medical insurance – which are inconsistent with allegations of severe and disabling symptoms (Tr. 20). The ALJ also noted Dr. Lue's recommendation of plaintiff adding Tylenol Arthritis to her current medications and Dr. Zuniga identifying water aerobic exercises as the only specific therapy while anti-depressants medications, muscle relaxants, and anti-inflammatories would improve her quality of life. In addition, he observed that plaintiff's subsequent visits to Dr. Carter until October 2002 were for other problems and she did not return to him until January 2005 to have disability forms filled out, at which time Dr. Carter noted that plaintiff was not currently receiving any routine therapy for her fibromyalgia (Tr. 20). The ALJ rejected Dr. Carter's January 5, 2005 RFC assessment since it was completed more than two years after the doctor's last examination of plaintiff and was not supported by the other evidence in the record. He again noted plaintiff's daily activities (Tr. 20).

The ALJ concluded that plaintiff retained the RFC to perform the exertional and non-exertional requirements of the full range of light work on a sustained basis (Tr. 20). However, since plaintiff's PRW required that she lift and/or carry over 20 pounds and frequently kneel, crouch, and

crawl, such demands of her PRW exceed her RFC and so plaintiff was unable to perform her PRW either as she actually performed it ir as it is generally performed in the national economy (Tr. 21).

Applying the Medical-Vocational Guidelines as to plaintiff's age, education and PRW, the ALJ found plaintiff to be not disabled as she could perform the demands of the full range of light work (Tr. 21-22).[9]

Plaintiff requested review of the ALJ's decision (Tr. 10).  The Appeals Council denied her request for review on May 5, 2006 (Tr. 3).  On June 6, 2006, plaintiff filed this action pursuant to 42 U.S.C. §405(g).

Plaintiff contends that the ALJ did not provide a legally sufficient rationale to completely ignore the treating physician's medical source statement as the treating physician's opinion regarding an applicant's impairment will be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  She asserts that Dr. Carter's statement was made when plaintiff was in attendance and medication was prescribed so the doctor must have done an examination at that time and was the treating physician during the period when she was insured.  He indicated a very restricted capacity for repetitive reaching, fingering and handling; her inability to complete normal workweeks and workdays without more than normal breaks or absences; and her lifting being limited

---

[9]Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

to less than 10 pounds. Plaintiff points to her complaints of pain throughout her treatment and Dr. Carter's referral to Dr. Lue. She continues that Dr. Lue noted her pain and, while her overall condition improved, she still had hand pain and counters that the ALJ assessment's that her medical treatment – essentially routine and conservative – was generally successful is contradicted by the medical evidence, there is no other treatment for fibromyalgia other than conservative treatment, and plaintiff complained about side effects of her medication and its ineffectiveness.

Plaintiff also argues that the ALJ improperly relied on the grid since she suffered from a non-exertional impairment – pain – which limited her ability to perform the full range of work contemplated by the guidelines and that expert vocational testimony is required. She argues that the ALJ refused to consider any of the impairments stated by Dr. Carter and instead basing his assessment on the state agency opinion where the very best report from a physician noted no improvement with her hands as supported by her testimony, the necessity for unscheduled breaks and the need to miss work at least three times a month due to the condition – all of which should have been included in her assessment.

For her final argument, plaintiff contends that the ALJ failed to make a proper credibility determination as the decision did not reveal a full consideration of all evidence relating to subjective complaints such as the duration, frequency and intensity of pain and functional restrictions. She states that while the ALJ did indicate the objective medical evidence supporting a finding of a light RFC and her testimony as to her activities, he did not indicate whether such activities were consistent or inconsistent with her allegations of pain and did not indicate the factors regarding her testimony that raised a question as to the degree of her impairments.

The Commissioner has responded that the ALJ correctly evaluated the medical evidence including that of Dr. Carter noting the ALJ's extensive review of the medical evidence. The Court agrees that the ALJ pointed out why he was discounting Dr. Carter's RFC as being made two years after the documented last exam, that it conflicted with his admission that her exams were usually unremarkable, and conflicted with the opinions of Drs. Lue and Zuniga, both specialists.[10]

> The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). "A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it." Hacker, 459 F.3d at 937. See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors opinions. A physician's statement that is "not supported by diagnoses based on objective evidence" will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936.

Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007).

As the Commissioner points out in his response, the ALJ has the responsibility of evaluating plaintiff's RFC on the record as a whole. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001)("It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."). He has correctly pointed out that the ALJ noted Dr. Lue's May 2001 report of good functioning and Dr. Zuniga's November

---

[10] Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)( "The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). See also, Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002)("It is the ALJ's function to resolve conflicts among "the various treating and examining physicians.").

2003 report that plaintiff had a normal and painless range of motion in all extremities. Thus, Dr. Steve Owens' RFC assessment was consistent with the ALJ's determination of the medical evidence in reaching his conclusion as to plaintiff's RFC.

Moreover, the case of Ellis v. Barnhart, 392 F.3d 988, 996-997 (8th Cir. 2005), discussed whether the use of the grids was error as set out below:

> Ellis argues that the ALJ erred in relying on the Medical-Vocational Guidelines (grids) to determine whether he was disabled because of his non-exertional impairments. The ALJ may not rely on the grids if Ellis suffers from non-exertional impairments, but instead must obtain the opinion of a vocational expert. See Shannon, 54 F.3d at 488. Non-exertional impairments that "do[ ] not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities" do not prevent use of the grids, however. Id. Because the ALJ was within his discretion, based on the record, to discredit Ellis's subjective complaints of pain and find that Ellis's pain did not diminish his ability to perform the full range of sedentary work, the ALJ properly relied on the grids without calling for vocational expert testimony. Id.
>
> ****
>
> If the ALJ had credited Dr. Johnson's opinion that Ellis could sit for no more than one hour at a time, then we would agree with Ellis that the ALJ should have sought the opinion of a vocational expert. We have already determined, however, that the ALJ properly discredited Dr. Johnson's opinion, and the ALJ's RFC assessment properly excluded that limitation. Having found, as supported by the record, that Ellis could sit for up to six hours during an eight-hour period, with no apparent need to alternate that position more frequently than every two hours, the ALJ appropriately relied on the grids. See Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir. 2003) (affirming ALJ's use of grids where ALJ properly discredited claimant's non-exertional complaints of fatigue).

Based on the ALJ's RFC assessment, there was no error in his using the Medical-Vocational Guidelines and not calling a vocational expert.

Finally, the Court finds that the ALJ made a proper credibility determination. He discussed plaintiff's daily activities twice; her description of the duration, frequency and intensity of the pain;

-11-

the effectiveness and side effects of medication including that she took only over-the-pain medication and had not tried narcotic-based pain relieving medications; her discontinuance of physical therapy and the recommendation for water aerobics.  The ALJ not required to discuss each Polaski factor as long as analytical framework is recognized and considered.  See, Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).  Here, it is clear that the ALJ detailed his reasons for concluding that plaintiff's pain was not to the extent alleged.

In sum, the Court finds that there is substantial evidence to support the Commissioner's decision that plaintiff was not disabled.

Accordingly, the Commissioner's administrative decision is hereby AFFIRMED.

IT IS SO ORDERED this 24th day of August, 2007.

_____
UNITED STATES DISTRICT JUDGE